## DAILY v. PARKER.
### No. 45 C 672.

District Court, N. D. Illinois, E. D.
June 29, 1945.

702

Urban A. Lavery, of Chicago, Ill., for plaintiff.

Eckert & Peterson, of Chicago, Ill., for defendant.

SULLIVAN, District Judge.

On May 10, 1945, plaintiff filed her complaint in this court asking damages in tort in the sum of $300,000. Jurisdiction is invoked on the ground that plaintiff is a citizen and resident of Oil City, Pennsylvania, and defendant is a citizen and resident of Chicago, Illinois, and the amount involved exceeds the sum of $3000, exclusive of interest and costs.

Count I of the complaint is entitled enticement, and sets out that for several years prior to February 9, 1944, defendant, a woman of great wealth, illegally and maliciously induced Wilfred J. Daily, the husband of plaintiff, to consort and associate with her; and on or about February 9, 1944, defendant enticed and induced the said Wilfred J. Daily to desert and abandon his wife and four minor children, and to remain away from their home in Oil City, Pennsylvania, and to constantly and continually live and associate with defendant in sundry other cities and places, particularly in the City of Chicago. That by reason of the illegal and malicious acts and doings of defendant, plaintiff's family life has been destroyed and all imponderables have been and will continue to be denied her; that the said Wilfred J. Daily has defaulted and failed in his financial duty and responsibility to plaintiff and to their children; except that after criminal non-support proceedings on behalf of plaintiff and her children were instituted against him in Pennsylvania, and a criminal extradition warrant presented to the Governor of Illinois, Wilfred J. Daily paid to plaintiff at various times a total of $500, which payments plaintiff believes will cease when such extradition proceedings are heard and determined. That Wilfred J. Daily refuses to leave defendant and return to live with his wife and children. Count II asks damages for alienation of affection, and Count III charges criminal conversation.

Defendant has filed a motion to strike and dismiss the complaint on the ground that Counts I and II are each in substance a claim for alienation of the affections of plaintiff's spouse, and Count III charges criminal conversation, all of which actions are barred by the Statutes of Illinois and of Pennsylvania.

In 1935 the Illinois Legislature enacted Sec. 246.1 et seq. of Chapter 38 of the Criminal Code, Ill.Rev.Stat.1941, popularly known as the "Heart Balm Law," entitled "An Act in relation to certain causes of action conducive to extortion and blackmail, and to declare illegal, contracts and acts made and done in pursuance thereof." Section 1 of the Act made it "unlawful * * * to file" an action "[for] alienation of affections, criminal conversation, or breach of contract to marry." Section 2 made void all contracts in settlement of these claims or causes of action. Section 3 prohibited the naming of a correspondent in a divorce action. Sections 4 and 5 were penal provisions making it a crime to file the actions named in Section 1, or to name a correspondent in a divorce action, as prohibited in Section 3. Section 6 provided that actions pending at the time of the passage of the Act were not affected thereby. In the case of People v. Mahumed, 381 Ill. 81, 44 N.E.2d 911, the Supreme Court of Illinois held Sections 3, 4 and 5 of the Act invalid and unconstitutional, for the reason that the subject matter of those sections was not included in the Title of the Act, thus leaving in force only Sections 1 and 2. In 1935, Acts Ind.1935, c. 208, the Indiana Legislature passed a law *abolishing* the right of action for alienation of affections, criminal conversation and breach of contract to marry, as did also New York and Pennsylvania. The Illinois law, however, together with the laws of some eight or nine other states, only made it *unlawful to file the actions*. Defendant insists that the Illinois Legislature by this Act intended to, and did in effect abolish suits for alienation of affection, breach of contract to marry and criminal conversation, and that Sections 1 and 2 thereof, which are the only sections now in force, are in reality a declaration of public policy, and amount to a legislative recognition of the blackmailing propensities of persons bringing this type of cases. I cannot believe that the Illinois Legislature intended to enact a law which would result in the protection of persons guilty of alienating the affections of a husband or a wife, declaring the same to be a public policy in the interest of the public

welfare, and at the same time make it unlawful for an aggrieved husband or wife to seek any redress for such injury, when the Constitution clearly provides that every person who is wronged or injured has a right to pursue his remedy.

The Indiana Statute abolishing the cause of action was passed prior to the time of the enactment of the Illinois legislation, and the Illinois Legislature, if it had intended to do so, I believe would have followed the Indiana law and abolished the actions, instead of merely prohibiting the filing of them, as it did. Section 1 of the Illinois law makes it unlawful to file such suits, and then in all other respects is almost identical with Section 3 of the Indiana law. In Pennington v. Stewart, 212 Ind. 553, 10 N.E.2d 619, 622, the Supreme Court of Indiana, in passing on the legality of Section 3 of the Indiana Act, said:

"The appellant and his attorneys are in this court testing the constitutionality of the act. They are asking for their day in court, and can it possibly be said that they are not entitled to this right without being branded as felons· * * *? We do not think so. * * * 'That is "due process of law," a heritage from centuries of struggle which this nation and the constituent states have deposited in the corner stone of their written Constitutions. Everyone is entitled, some time, somewhere to his "day in court."' Consolidated Gas Co. v. Mayer, C.C., 146 F. 150, 152."

Section 19 of Article II of the Illinois Constitution of 1870, Smith-Hurd Stats., provides that: "Every person ought to find a certain remedy in the laws for all injuries and wrongs which he may receive in his person, property or reputation, * *."

In the case of Cunningham v. Dorby, pending in the Superior Court of Cook County, where defendant moved to dismiss the complaint for breach of promise to marry on the ground that the bringing of the action was prohibited by Section 1 of Chapter 38, Judge Padden, in denying the motion, said:

"The Constitution of the State of Illinois, Art. 2, Sec. 19, provides among other things:

"'[That] every person ought to find a certain remedy in the laws for all injuries and wrongs which he may receive in his person, [in his] property, or reputation.'

"The section of the statute under consideration clearly deprives people of the right to sue for breach of contract to marry.

"The question does not present one of procedure or practice but of substantive fundamental law. If the legislature can deprive a person of the right to sue for breach of contract to marry, it can abolish the right to sue for the violation of any contract or other wrong. The marriage contract has always been considered in our law one of the most important contracts, and to deny any one aggrieved the right to sue for a breach thereof, and to make it unlawful even to assert such right, seems clearly to contravene the Constitution of this State, which secures to all a remedy for every wrong. In fact, until Section 5 of the Act in question was held void by our State Supreme Court for a technical reason, the Act made it a criminal offense to assert the right in court or for an attorney at law to file such a suit.

"To uphold a law of this kind would be not only to ignore the plain provisions of the Constitution, but it would seem to put a premium on violation of the moral law, making those who violate that law a privileged class free to pursue a course of reprehensible conduct without fear of punishment, even to the extent of a suit for damages.

"A legislative enactment should not be lightly set aside, but where the violation of the fundamental law is clear, it should not be allowed to stand.

"No doubt suits for breach of promise are sometimes used as a form of blackmail, but that is a matter to be dealt with in a special way. The fact that the right is abused by some is hardly a justification for the denial of the fundamental right to redress by those who have a just cause of action."

Within the past few days in the case of Charles Zaremba v. Anthony Skurdialis, for alienation of affections, Judge Charles A. Williams, in the Superior Court of Cook County, in denying a motion to dismiss also held the law prohibiting the filing of such suits unconstitutional.

I agree with the reasoning of Judge Padden in the case of Cunningham v. Dorby, supra. Therefore the motion to strike and dismiss in the instant case is denied, and defendant is given thirty days within which to answer.