No. 21445.

ROSAMOND GOLDBERG *v*. EVE MUSIM.

(427 P.2d 698)

Decided May 1, 1967. Rehearing denied May 29, 1967.

Charles Ginsberg, Charles Murdock, for plaintiff in error.

Gelt and Grossman, Fred M. Winner, Herbert H. Galchinsky, for defendant in error.

*En Banc.*

Mr. Justice Sutton delivered the opinion of the Court.

C.R.S. 1963, 41-3-1, formerly C.R.S. '53, 41-3-1, involved in this action reads as follows:

"Civil causes abolished. — All civil causes of action for breach of promise to marry, alienation of affections, criminal conversation and seduction are hereby abolished."

Rosamond Goldberg, plaintiff in error and plaintiff in the trial court, filed her amended complaint entitled "Damages for Impairment of Contract" on February 21, 1964, alleging as follows:

"I.

"The plaintiff and Harry H. Goldberg are husband and wife, having been married at Raton, New Mexico, on October 30, 1945; the plaintiff having obtained a Decree of Separate Maintenance in the District Court

of the City and County of Denver, Colorado, on the 24th day of June, 1963, granted to the plaintiff because of the midconduct (sic) of said Harry H. Goldberg; that said action was filed on or about October 15, 1962.

"II.

"That the defendant, above named, at Palm Springs, California, and at various other places in the United States and Europe at various times and for several months prior to October 15, 1962, and continuously since said date, has induced plaintiff's husband to separate from the plaintiff resulting in the plaintiff's loss of services and society of her husband.

"III.

"That plaintiff's husband separated from and left the plaintiff on or about October 15, 1962, and the defendant, above named, at Palm Springs, California, and at various other places in the United States and Europe at various times and continuously since said date has persuaded plaintiff's husband not to return to her, resulting in the loss to the plaintiff of the services and society of her husband.

"IV.

"That on or about October 15, 1962, and continuously since said date the defendant, above named, for the purpose of depriving the plaintiff of her proper share of the property and estate accumulated during the marriage of the plaintiff and her husband, or owned by him and for the purpose of acquiring substantial amounts of said property for herself, induced and persuaded the plaintiff's husband to separate from the plaintiff, which he did on or about October 15, 1962, as a result of defendant's inducements and persuasions.

"V.

"That the plaintiff's husband separated from and left the plaintiff on or about October 15, 1962, and the defendant, above named, at Palm Springs, California, and at various other places in the United States and Europe and continuously since said date for the purpose of de-

priving the plaintiff of her proper share of the property and estate accumulated during the marriage of the plaintiff and her husband, or owned by him, and for the purpose of acquiring substantial amounts of said property for herself, induced and persuaded the plaintiff's husband not to return to her. As a result of defendant's wrongful acts, the defendant has acquired for herself from the plaintiff's husband substantial amounts of property and large sums of money which he has expended for the benefit of said defendant, and the plaintiff has been deprived of the use and enjoyment of said property.

"VI.

"That the acts and conduct of the defendant herein, as above set forth, have caused the separation of the plaintiff and her husband and made necessary the action for the decree of Separate Maintenance, described in Paragraph I hereof, causing the plaintiff great mental pain, suffering, humiliation, loss of social standing in the community and family disgrace.

"VII.

"That by reason of all the matters and things herein alleged, the plaintiff has been damaged in the amount of One Million Dollars.

"VIII.

"That in committing the acts complained of herein, the defendant has been guilty of malice, fraud and willful deceit, consisting of a reckless and willful desregard of the rights of the plaintiff by reason whereof, the plaintiff is entitled to an execution against the body of the defendant until the amount of any judgment rendered herein shall have been paid.

"X.

"Plaintiff believes that the within entitled action is not included as an action allegedly abolished under and by virtue of Chapter 41, Article 3, Colorado Revised Statutes of 1953. In any event, Chapter 41, Article 3, Sections 1, 2, 3, 4 and 5 of the Colorado Revised Statutes

of 1953 are void and of no force or effect and are unconstitutional and in violation of Article II, Section 6, and Article V, Section 21, of the Constitution of the State of Colorado, and by virtue thereof any actions the plaintiff has as alleged herein may be maintained."

To this complaint defendant in error Musim, defendant in the trial court, filed a motion to dismiss on the grounds that it failed to state a claim upon which relief could be granted and that the court lacked jurisdiction over the subject matter. The trial court, after a hearing, granted the motion. It held that the statutes in question are constitutional and that the substance of plaintiff's claim was in the nature of an action for alienation of affections and therefore barred by the statute.

On writ of error challenging this ruling, Goldberg claims as grounds for reversal that:

(1) When considering a motion to dismiss, each allegation of the complaint must be taken as true.

(2) The law recognizes that there may be a wrongful interference with the marital relation which does not involve alienation of affections or criminal conversation.

(3) The 1937 Statute abolishing actions for alienation of affections is unconstitutional since it denies plaintiff a remedy for an intentional wrong.

(4) The 1937 Statute is unconstitutional as it contains more than one subject.

The record includes a copy of a decree of separate maintenance awarded plaintiff on June 24, 1963. At that time a hearing on division of property, maintenance, costs and attorney fees was set for September 24, 1963; however, nothing in the record appears as to the disposition of the latter issues. In this regard the trial court in its ruling noted:

"* * * the plaintiff and her husband are engaged in a lawsuit in this Court, even though in a different division, which includes the question of division of property and what the property rights of the plaintiff are in the property held in the husband's name."

Plaintiff's first allegation of error, viz., that the facts alleged in the complaint must be accepted as true by the court upon consideration of a motion to dismiss, is a correct statement of the law. *E.g., Martinez v. Southern Ute Tribe,* 150 Colo. 504, 374 P.2d 691 (1962) and *Kaminsky v. Kaminsky,* 145 Colo. 492, 359 P.2d 675 (1961). There is, however, no indication in this record that the above-cited rule was misapplied by the trial court in reaching its conclusion that the complaint failed to state a claim. We assume for this purpose that C.R.S. 1963, 41-3-1 bars the claim as in substance being one for alienation of affections; and we further assume that the complaint fails to state any other claim which is not barred by the statute. We must therefore determine the validity of C.R.S. 1963, 41-3-1, and also, whether any other claim for relief has been stated outside of the act.

We agree with the trial court when it concluded that this complaint sets forth what in law is a claim for alienation of affections. The injury in such an action is one of loss of affection and consortium, including loss of society, companionship and aid. See *Worth v. Worth,* 48 Wyo. 441, 49 P.2d 649 (1935); 27 Am. Jur., *Husband and Wife* § 524. The action required on the part of a defendant in such a case is simply inducing the spouse of the plaintiff to leave, or, once having left, to remain separated from the plaintiff. See *French v. Deane,* 19 Colo. 504, 36 Pac. 609 (1894). The action necessarily involves intent to induce the spouse to separate. See 27 Am. Jur., *Husband and Wife* § 523. With this in mind it seems clear that the facts alleged in Paragraphs II, III, IV, and VI of the complaint place them squarely within the abolished action, for all that is alleged rises out of a relationship, *i.e.,* an inducement to separate and resulting loss of society, loss of services, pain, suffering and humiliation.

The facts alleged in Paragraph V, however, seem to involve an injury to a purported property right belonging to plaintiff as a result of her marriage con-

tract and which is not included within an action for alienation of affections. Assuming that the facts alleged may state a claim, we believe, however, that they are not such that the relief requested may be granted in this action. This is so because the plaintiff has already instituted an action for separate maintenance in connection with which all of her property rights arising out of the marriage should be adjudicated. A fraudulent transfer of property by the husband to Musim, if made for the purpose of depriving the wife of her rightful share in the property, should be attacked in connection with that action, or in subsequent proceedings for modification of the awards made pursuant to that action, by requesting that the transfer be set aside. See *Bostron v. Bostron*, 128 Colo. 535, 265 P.2d 230 (1953) and *Fahey v. Fahey*, 43 Colo. 354, 96 Pac. 251 (1908).

██ In this connection we note that plaintiff has alleged transfer of property belonging solely to her husband as well as property accumulated during the marriage. In *Bostron v. Bostron, supra,* at 539, we cited with approval language employed in earlier Colorado decisions to the effect that:

"* * * There can be no doubt of the power of a husband to dispose absolutely of his property during his life, independently of the concurrence, and exonerated from the claim of his wife, provided the transaction is not merely colorable, and be unattended with circumstances indicative of fraud upon the rights of the wife. If the disposition of the husband be *bona fide*, and no right is reserved to him, though made to defeat the right of the wife, it will be good against her."

We, therefore, conclude that there is no merit to plaintiff in error's second ground of error.

We turn now to the question of whether the statute abolishing actions for alienation of affections is constitutional; for if it is not, then we must uphold the complaint as stating a claim for which relief may be granted.

Plaintiff in error claims that the act is unconstitutional on two grounds: *i.e.,* that it is violative of the Constitution of Colorado, Art. II, Sec. 6; and, that the act is void as containing more than one subject (Art. V, Sec. 21). The first Constitutional provision in question reads:

"Equality of justice. — Courts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character; and right and justice should be administered without sale, denial or delay."

 It seems clear that the above-quoted type of constitutional section applies only to injuries which result from a breach of a legal duty or an invasion or infringement upon a legal right. *E.g., Vogts v. Guerrette,* 142 Colo. 527, 351 P.2d 851 (1960); *Randle v. Payne,* 39 Ala. App. 652, 107 S.2d 907 (1958); *Scholberg v. Itnyre,* 264 Wis. 211, 58 N.W.2d 698 (1953); *Simons v. Kidd,* 73 S.D. 41, 38 N.W.2d 883 (1949); *Cason v. Baskin,* 155 Fla. 198, 20 S.2d 243, 250 (1945); *Pickett v. Matthews,* 238 Ala. 542, 192 So. 261 (1939). In *Cason, supra,* the Florida court said:

"* * * The word 'injury,' * * *, does imply the doing of some act which constitutes an invasion of a *legal* right. The law cannot possibly remedy all of the evils which affect mankind. But this much can be said, in construing this section of our Bill of Rights, that for any act of another *which constitutes an injurious invasion of any right of the individual which is recognized by or founded upon any applicable principle of law,* statutory or common, the courts shall be open to him and he 'shall have remedy, by due course of law.'" (Emphasis added.)

 It has also been recognized by this court, as well as those in other jurisdictions, that this and similar constitutional provisions are mandates to the judiciary rather than to legislatures. *Vogts v. Guerrette, supra; Wagoner County Election Board v. Plunkett,* 305 P.2d

525 (Okla. 1956); *Pickett v. Matthews, supra.* In *Vogts* we quoted with approval the following language from *Pickett*:

" 'That [the Constitutional provision] means that when a duty has been breached producing a legal claim for damages, such claimant cannot be denied the benefit of his claim for the absence of a remedy. But this provision does not undertake to preserve existing duties against legislative change made before the breach occurs. There can be no legal claim for damages to the person or property of anyone except as it follows from the breach of a legal duty.' "

By specific wording in C.R.S. 1963, 41-3-1 and 41-3-2 our legislature has abolished the legal duties and rights of action here in question, even though they were recognized at common law; except, in one instance as to the wife, as hereinafter noted.

Plaintiff in error cites *Heck v. Schupp*, 394 Ill. 296, 68 N.E.2d 464 (1946) and *Daily v. Parker*, 61 F. Supp. 701 (N.D. Ill. 1945) for the proposition that abolition of actions for alienation of affections violates a provision in the Illinois Constitution which is similar to Colorado's. We note, however, that the Illinois act, concerning these actions, merely made it a criminal offense to file a suit and it did not, as does ours, abolish the claim or right of action itself.

The power of the legislature to abolish substantive common law rights including those vouchsafed by the common law of England, in order to attain a permissible legislative object, has already been decided by this court in *Vogts v. Guerrette, supra,* and in *Colorado State Board of Pharmacy v. Hallett*, 88 Colo. 331, 335, 296 Pac. 540 (1931). In *Hallett* we said:

"* * * The common law of England was not adopted in the state of Colorado by our Constitution, as it was originally approved by the people, or by any subsequent constitutional enactment. The common law prevails in this state only by virtue of its adoption into the law

of the state by legislative enactment. It may be repealed, without violating our Constitution, by our general assembly at any time it chooses to do so. * * * The legislature may at any time by a legislative act, repeal any part of the common law either expressly or by passage of an act inconsistent therewith on any particular subject."

See also *Silver v. Silver*, 280 U.S. 117, 50 S. Ct. 57, 58, 74 L. Ed. 221 (1929) in which the following language appears:

"* * * We need not * * * elaborate the rule that the Constitution does not forbid the creation of new rights, *or the abolition of old ones recognized by the common law,* to attain a permissible legislative object." (Emphasis added.)

In this connection, it should be noted that while marriage is a status it also is a contract, but not such a contract as is protected from impairment by the State and Federal constitutions. *Rotwein v. Gersten,* 160 Fla. 736, 36 So.2d 419 (1948); *Hanfgarn v. Mark,* 274 N.Y. 22, 8 N.E.2d 47 (1937); *Bunten v. Bunten,* 15 N.J. Misc. 532, 192 Atl. 727 (1937). In addition, we point out that at common law a wife had no right of action for alienation of the affections of her husband. 3 *Blackstone* 143; *Moulin v. Monteleone,* 165 La. 169, 115 So. 447, 450 (1928); *Howard v. Howard,* 120 Me. 479, 115 Atl. 259 (1921), though today such a claim is recognized in some jurisdictions as to both spouses. See *Young v. Young,* 236 Ala. 627, 184 So. 187, 190 (1938).

The legislative object in abolishing these claims which relate to the marriage status is amply set out in C.R.S. 1963, 41-3-3. We hold that the legislature had the power so to act under the inherent police power of the state; therefore, C.R.S. 1963, 41-3-1 is not violative of the Constitution. *A fortiori* plaintiff in error has no claim against defendant in error Musim. Such a holding, in our view, also comports with the views of all of those states which have heretofore ruled upon similar enact-

ments except Illinois, which we have previously mentioned. Our research reveals that to date at least fourteen states, including Colorado, have adopted some type of statute either abolishing or prohibiting actions for the alienation of affections and that, in addition, one has forbidden it by judicial decision. As to the latter see *Gaines v. Poindexter*, 155 F. Supp. 638 (W.D. La. 1957) and *Moulin v. Monteleone, supra*. As to those which have adopted statutes, courts in California [*Ikuta v. Ikuta*, 97 C.A.2d 787, 218 P.2d 854 (1950)], Florida [*Rotwein v. Gersten, supra*], Indiana [*Pennington v. Stewart*, 212 Ind. 553, 10 N.E.2d 619 (1937)], Michigan [*Bean v. McFarland*, 280 Mich. 19, 273 N.W. 332 (1937)], New Jersey [*Bunten v. Bunten, supra*], and New York [*Hanfgarn v. Mark, supra*] have upheld them, and the limited Pennsylvania act has also been sustained, *McMullen v. Nannah*, 49 Pa. D&C 516 (1944), but see *Wilder v. Reno*, 43 F. Supp. 727 (D.C. Pa. 1942). Apparently such statutes have not yet been tested constitutionally in Alabama (Alabama Statutes, Tit. 7 § 115; but see *Young v. Young, supra*), Maryland (Annotated Code of Maryland, Art. 75C § 2), Montana (Rev. Code of Montana Tit. 17 § 1201 [1965 Cum. Supp.]), Nevada (Nevada Revised Statutes § 41.380), and Wyoming (Wyoming Statutes § 1-728). Apparently Illinois is the only state which has declared such an act unconstitutional (*Heck v. Schupp* and *Daily v. Parker, supra*).

Nor do we find any merit in plaintiff in error's fourth contention, *i.e.*, that the entire act here involved violates Article V, Section 21 of the Constitution of Colorado. The latter Section provides that no bill may contain more than one subject which subject must be clearly expressed in the title. Here the bill itself (Session Laws of Colorado, 1937, Chapter 111, p. 403) was entitled:

"AN ACT TO PROMOTE PUBLIC MORALS, BY ABOLISHING CIVIL CAUSES OF ACTION FOR BREACH OF PROMISE TO MARRY, ALIENATION OF

473

AFFECTIONS, CRIMINAL CONVERSATION, AND CERTAIN CAUSES OF ACTION FOR SEDUCTION, PROHIBITING THE BRINGING, PROSECUTION OR SETTLEMENT OF ANY SUCH ACTIONS, ESTABLISHING LIMITATIONS THEREON, REGULATING THE PROCEDURE IN SUCH ACTIONS AND IN ACTIONS AND PROCEEDINGS FOR DIVORCE, SEPARATE MAINTENANCE, ANNULMENT OF MARRIAGE, AND FOR CUSTODY OR SUPPORT OF CHILDREN, PRESCRIBING PENALTIES FOR THE VIOLATION OF THIS ACT."

It is plaintiff in error's position that the sections included within the act that follow the aforesaid preamble cover a number of different topics. This is so to some degree; however, we have held that no violation of the mandates of the Constitution occur if the subject matter, as here, is germane to the general subject expressed in the title. *Corder v. Pond,* 117 Colo. 463, 190 P.2d 582 (1948); *Redmon v. Davis,* 115 Colo. 415, 174 P.2d 945 (1946); *Gordon v. Wheatridge Water District,* 107 Colo. 128, 109 P.2d 899 (1941). Here the title is a general statement of but one topic, *i.e.,* that of promoting the public morals by the abolition and regulation of certain actions affecting domestic relations. In *Gordon, supra,* we said, quoting with approval from *In re Breene,* 14 Colo. 401, 24 Pac. 3 (1890):

"* * * 'The general assembly may, within reason make the title of a bill as comprehensive as it chooses, and thus cover legislation, relating to many minor but associated matters.' "

We find no error in the trial court's dismissal of this complaint.

The judgment is affirmed.

MR. CHIEF JUSTICE MOORE dissenting, MR. JUSTICE PRINGLE not participating.