No. 16,723.

CARROLL *v*. FIRST NATIONAL BANK IN LOVELAND ET AL.
(249 P. [2d] 540)

Decided October 14, 1952.

Mr. F. W. HARDING, ONALEE BROWN, for plaintiff in error.

Mr. HATFIELD CHILSON, Mr. ROBERT M. MCCREERY, for defendant in error First National Bank in Loveland.

Messrs. IRELAND, IRELAND, STAPLETON & PRYOR, for defendant in error Central Bank and Trust Company.

Mr. KENNETH W. ROBINSON, Mr. R. D. CHARLTON, Mr. ROBERT SWANSON, for defendant in error Hoffman.

*En Banc.*

MR. CHIEF JUSTICE JACKSON delivered the opinion of the court.

THE First National Bank in Loveland, hereinafter called the bank, suing Carroll as maker of certain prom-

issory notes payable to the bank, and also asking foreclosure on a chattel mortgage securing them, obtained favorable summary judgment. Carroll, seeking reversal here, alleges error on the basis that his answer set forth a valid counterclaim for which he should have been given credit in figuring the amount of the judgment.

The counterclaim consists of an allegation that on or about January 27, 1949, plaintiff received and credited defendant's account with the sum of $12,956.09 which two days later was wrongfully withdrawn from defendant's account by plaintiff; that it is this sum that should have been set off in figuring the amount due the bank by Carroll.

Carroll for his fourth defense pleaded in more detail that on January 19, 1949, defendant for the first time ascertained that a check, executed by him to the S. Adams Packing Company in the sum of $12,956.09, bore an altered endorsement and that defendant had received no credit on his account with that company for the amount of the check; that on January 22, 1949, Carroll presented the check for reimbursement to the bank, and that in turn the bank demanded reimbursement from the Central Bank and Trust Company, of Denver, a prior endorser, which on January 25, 1949, drew its cashier's check, payable to the Loveland bank, for $12,956.09 which was received by the bank and credited to Carroll's account on January 27. Carroll further asserted negligence by the bank in honoring this check bearing an alternate endorsement.

January 27, 1949, Carroll was notified by the president of the bank that the sum of $12,956.09 had been received from the Central Bank and Trust Company to be applied to his account, but advised Carroll not to come in until the following day as he desired to take care of this matter personally. On the following day Carroll visited the bank and demanded payment of the sum in question, but the bank failed and refused to let defendant withdraw that sum or any part of it. There then

follows an allegation of negligence on the part of the bank, in that it prevented Carroll from withdrawing from his account the moneys deposited to it on January 27, well knowing that an action was then and there being prepared to restrain plaintiff bank and Carroll from withdrawing that sum. Carroll further alleged that on February 4 he, for the first time, learned that the amount had been credited to his account on January 27 and had been withdrawn from it on the 29th. Carroll further alleged that upon presenting the check issued by him to the S. Adams Packing Company with an altered endorsement he was entitled to an immediate credit by the bank; that the bank's withdrawal of the credit was unlawful and prejudicial to the rights of Carroll; that Carroll had made demand for the payment of the sum both verbally and in writing, but that the bank had refused; that this was an insult and a wanton disregard of the rights and feelings of Carroll; that by reason of the acts of the bank, Carroll was required to pay an additional amount of $1,570.79 to the S. Adams Packing Company and has been unable to pay other accounts due and owing by him and his credit and standing in the community has been injured in the amount of $25,-000.00.

The bank then filed a third party complaint against the Central Bank and Trust Company of Denver for the amount of the counterclaim. The latter filed a third party complaint against Joe E. Hoffman for a like sum. In its answer to the counterclaim of Carroll, the bank admitted that in the latter part of January 1949 Carroll presented to it the above described cancelled check, payable to the S. Adams Packing Company; that Carroll at the time claimed that George W. Green, doing business as the S. Adams Packing Company, neither endorsed the same nor received its proceeds, and requested the bank to obtain a reimbursement from the Central Bank and Trust Company, in Denver, a prior endorser. It admits that on January 25, 1949, Central. Bank and

Trust Company drew its cashier's check payable to the bank in reimbursement of the check; denies that the sum of $12,956.09 as cash was ever received by the plaintiff, but alleges that the cashier's check of the Central Bank and Trust Company was deposited to Carroll's account January 27. On January 28 Central Bank and Trust Company refused payment of its cashier's check, and ever since then has refused to pay it. The bank admits that it notified Carroll that it received a cashier's check from Central Bank and Trust Company, but denies that it ever advised defendant that it received the money. The bank further answered, showing that May 3, 1948, Carroll issued his check, drawn on his account in the Loveland bank in the amount of $12,956.09, payable to the S. Adams Packing Company; that the check was thereafter returned to plaintiff bank in the ordinary course of business as a debit item against Carroll; that the check bore a stamp endorsement of the S. Adams Packing Company, a stamp endorsement of Joe E. Hoffman for deposit in the Central Bank and Trust Company (the endorsement of the latter guaranteeing previous endorsements), and also the endorsement of the Federal Reserve Bank of Kansas City guaranteeing previous endorsements; that the Loveland bank, relying upon these endorsements, charged the check against the account of Carroll on May 4, 1948. Further, that George W. Green was the owner of and doing business under the name and style of the S. Adams Packing Company and was the person entitled to the proceeds of the check; that in the latter part of January, 1949, Carroll informed the bank that the stamp endorsement of the S. Adams Packing Company on the check was not Green's endorsement, and that the latter never received the proceeds of the check; that Carroll requested the bank to see if the check could not be charged back to the Central Bank and Trust Company; that it was upon this request that the bank returned the

check to the Central Bank and Trust Company and requested reimbursement as asked by Carroll.

The bank further answered that the Central Bank and Trust Company did, on January 25, issue its cashier's check in the amount of $12,956.09 in reimbursement of defendant's check to the S. Adams Packing Company; that it was received by the Loveland bank January 27, and after endorsement by the bank was thereupon deposited to the credit of defendant's account with plaintiff bank on the usual terms with its depositors, to-wit: that it was received for collection or credit at the depositor's risk and should the check be dishonored the same would be charged back to depositor's account. The bank promptly sent the cashier's check through the usual course for collection in Denver, and upon presentation on January 28 the Central Bank and Trust Company dishonored and refused to pay it.

Carroll was immediately notified of this dishonor and refusal by the trust company, and the bank withdrew the credit of the amount of the trust company's cashier's check to Carroll's account, charging the amount back against his account together with protest fees and expenses. It was further alleged that the Central Bank and Trust Company has at all times refused to honor and pay the cashier's check.

The bank further answered Carroll's counterclaim by averring that it was served with summons January 27 in a case in the district court of the City and County of Denver, No. A-62717, in which Joe Hoffman was plaintiff and George W. Green, doing business as S. Adams Packing Company, Central Bank and Trust Company of Denver, First National Bank in Loveland, and Halley Carroll were defendants; that on the same day it was served with a temporary restraining order in that case restraining it from transmitting or paying in any form to Carroll the sum of $12,956.09 until the further order of the court; that a similar temporary restraining order was served upon the Central Bank and Trust Company

January 26, and on Carroll on or about January 28; that Carroll was likewise served with summons in this action; that this temporary restraining order was subsequently made a preliminary injunction, and on October 10 the Denver district court determined that George W. Green did obtain the proceeds of the check given by defendant Carroll to the S. Adams Packing Company, and that Carroll had no interest in the moneys represented by the cashier's check issued by the Central Bank and Trust Company. The court entered a permanent injunction, requiring the proceeds of the cashier's check to be delivered to Joe Hoffman, plaintiff in that action; that there has accordingly been a judicial determination that Carroll was never entitled to reimbursement on the check given by him to the S. Adams Packing Company and was never entitled to the proceeds of the check issued by the Central Bank and Trust Company. [This action of the trial court was later affirmed in *Green v. Hoffman,* 124 Colo. 61, 234 P. (2d) 624.]

It is further alleged, therefore, that the matters and things in issue between the bank and Carroll have been determined by a court of competent jurisdiction, and that such things at issue are res judicata and that the counterclaim should be dismissed.

The bank further alleged laches on the part of Carroll, in that at no time from May 3, 1948, when Carroll issued his check to the S. Adams Packing Company, did Carroll complain or indicate to the bank that it had improperly charged the check against his account, and that the check was charged against his account on the 4th day of May, 1948; that in spite of that fact more than eight months elapsed before the bank was notified of any claim that the check was improperly charged to Carroll's account.

In a fifth defense to Carroll's counterclaim, the bank alleged any injury or damages which Carroll sustained were the result of his own negligence; and for a sixth defense alleged that Carroll was guilty of contributory

negligence. The court subsequently made Joe E. Hoffman and the Central Bank and Trust Company, after proper complaints were filed, third parties defendant; and they filed their respective answers. The subsequent motion for summary judgment filed by the bank was based upon the grounds that all material and relevant facts upon which the counterclaim is based are either admitted or are res judicata, having been previously determined in *Green v. Hoffman, supra,* and that no actual issue of facts exists for the determination of the counterclaim. The bank supported its motion with an affidavit of its vice president, and with copies of the proceedings in the Denver district court case. July 21, 1950, the trial court dismissed the third party complainants. July 29, 1950, the court entered summary judgment in favor of the bank against Carroll in the sum of $15,798.19.

It is alleged that the bank was negligent in honoring an altered instrument. An exhibit attached to the pleading shows that the check was made payable to the order of the S. Adams Packing Company. Its reverse side shows various rubber stamp endorsements, the first bearing the following legend:

"xxxxxxxxxxxxxxx
Denver, Colo.; or order
S. Adams Packing Co.
xxxxxxxxxxxxxxx"

The next rubber stamp endorsement reads as follows:

"Pay Central Bank & Trust Co.
Denver, Colo.; or order
Joe E. Hoffman
For deposit."

It is apparent that the words on both the top and bottom lines of the S. Adams Packing Company rubber stamp have been inked out. This could have been done for the purpose of changing the character of the endorsement from a restrictive to a general one. An example of a typical restrictive endorsement is the Joe E. Hoffman endorsement.

Carroll's complaint charges that by the alteration of the S. Adams Packing Company endorsement, Green, doing business at the S. Adams Packing Company, did not receive the proceeds of the check. This question we have already determined otherwise in *Green v. Hoffman, supra*. It is therefore res judicata. The cases cited by counsel for Carroll, relating to forged checks and instruments, therefore do not seem to be applicable here.

Although charging in his pleading that the bank received cash from the Central Bank and Trust Company and that it was cash that he should have been allowed to withdraw immediately, Carroll in his brief does not contend that the bank received aught than the Central Bank and Trust Company's cashier's check. Thus his brief argues, "Plaintiff Bank was or should have been well aware of the fact that until the injunction proceedings were actually instituted and service made, that the cashier's check received from the Central Bank and Trust Company was the same as cash, and owed a duty to Defendant not to affirmatively prevent Defendant's withdrawing same."

That quotation also discloses a main argument by Carroll, i.e., that the bank violated its duty to supply plaintiff with a full and fair disclosure of all facts and circumstances known to it. Had the bank disclosed to Carroll that it had been informed of the pending injunction suit and of the dishonor of the cashier's check, it might well have withheld immediate credit of the proceeds. In fact, with the knowledge of pending court action, it could well have laid itself open to the charge of questionable practice, if not contempt of court, if it had connived with Carroll so that the latter could have drawn out of the bank immediately, on January 27, 1949, the proceeds of the cashier's check of the Central Bank and Trust Company. It is on this point Carroll claims to have been damaged.

By the terms of the deposit agreement between the bank and its depositors, duly set forth in the pleadings,

it made the usual reservation of the right to charge back against the depositor's account any uncollectible item deposited to such account. It did that very thing when served with the restraining order of the Denver court and with notice of the dishonor of the cashier's check.

We are of the opinion that the trial court was correct in granting summary judgment. There appears to be no genuine issue of facts in the case, and the resolution of the issues of law are proper.

The judgment is accordingly affirmed.

MR. JUSTICE MOORE does not participate.